McMillan, judge.
The appellant, Willie B. Smith III, was found guilty of two counts of capital murder, for committing an intentional murder during the course of a robbery and for committing an intentional murder in the course of a kidnapping, see § 13A-5-40(a)(2) and § 13A5-40(a)(l), Code of Alabama 1975, respectively. The jury thereafter returned an advisory verdict recommending that the appellant be sentenced to death, by a vote of 10 to 2. Following a sentencing hearing before the trial court, the appellant was sentenced to death by electrocution.
Because the appellant raises an issue that requires us to remand this cause to the trial court for a hearing, the remaining issues are pretermitted until a return is filed by the trial court with this court.
The appellant argues that the trial court erred in determining that he failed to make a prima facie showing of gender discrimination in the exercise of the prosecutor’s preempto-ry challenges against potential jurors, as prohibited by J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The appellant argues that he made a prima facie showing of such discrimination and that the trial court should have required that the prosecutor come forward with gender-neutral reasons for his strikes.
The record reflects that, following the striking of the jury, defense counsel stated that he would request a hearing pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The following then transpired outside the presence of the jury:
“THE COURT: [Defense counsel,] do you want to be heard, sir?
“[Defense Counsel]: Yes, if I may, Judge, on actually three matters. Number one, he used 14 of his 15 strikes to eliminate prospective jurors of the female gender. He did not strike anything but females until his fourteenth strike.
“I don’t see any — you know, there’s no recognizable difference between some of the women he struck and some of the men, — there’s no basis for it other than the fact that he was trying to eliminate women from the jury. Also I want to talk about specifically number 210, which is a Hispanic, which would also be covered under Bat-son. This is the only Hispanic in the jury venire. Mr. Davis asked her absolutely no questions whatsoever. And struck her as his number seven strike. We feel like that is a clear Batson violation and she should be replaced on the jury. I don’t know what he could have learned, as I say, he asked her no questions, none.
“192 — the one that you indicated that he asked us to observe, I did observe. At the time I observed her she was not — did not appear to be inattentive. But, I also point out, in the event that in fact she did appear to be inattentive, Mr. T. G., Number 93, was almost asleep during all of the questions, unless he was asked a question. He was sitting right on the first row of the back row of benches, which is clear for someone to see. And he rubbed his eyes and his eyes were closed much of the time, his hands were on his face.
“THE COURT: You struck him, didn’t you—
“[Defense Counsel]: I struck him way down the line, Judge.
“THE COURT: Okay.
“[Defense Counsel]: Number 93—
“THE COURT: Yes, tenth strike.
“[Defense Counsel]: He was my tenth strike, so there were nine strikes that the Honorable prosecutor had prior to getting *1168 to him. You know, he appeared to be less alert than the black female. I think striking her was merely a ruse, her inattentiveness was a ruse to get rid of her.
“Also on the black female seated, Number 74. Your Honor, [the prosecutor] and I, it is a unique situation where he and I both basically have the same access to her, he has taught her in one or two courses out at Miles [School of Law]. I believe he has taught her in two courses.
[Prosecutor]: Two courses.
“[Defense Counsel]: Yes, sir. I am going to be teaching her. She indicated clearly it wouldn’t influence her in any other way. There-was no other reason to strike this young lady. She is articulate, she is alert, she didn’t seem hostile to either side. I feel like she should also be replaced.
“If I could go back, Your Honor, the constitution of the State of Alabama, the equal protection clauses prohibit striking prospective jurors because of gender.
“THE COURT: Does that apply to you too or just the State? What is your argument on that? You struck 11 males, right?
[Defense Counsel]: Yes, sir. He struck, 14 out of 15 of his strikes were females. I believe our constitution is very clear, you cannot use race — I mean sex as a basis for eliminating jurors. And I believe that he has done that and I would ask that these women be put back on the jury, if he does not have gender-neutral reasons for striking each and every one of them. And I would ask you to query him on that.
“THE COURT: Well, I am going to respectfully decline to say that you have made a prima facie case of discriminatory striking, sir.
“[Prosecutor]: Thank you.
“THE COURT: Let’s go.
“[Defense Counsel]: Let me finish. For the record, I thought you set the prima facie when you start asking — we have the white [sic] defendant—
“THE COURT: I was just giving the background, Dan.
“[Defense Counsel]: Yes, sir. Oh, I’m sorry—
“THE COURT: I’m sorry, I didn’t mean to say that—
“[Defense Counsel]: No, no—
“THE COURT: — there was a prima facie ease—
“[Defense Counsel]: We have a black defendant, we have a situation where the victim is white.
“THE COURT: That’s right.
“[Defense Counsel]: We have a situation where a number of one, two, three, four, five blacks were struck, we had one Hispanic struck, which had no questions asked her by the prosecutor.
‘We also bring to the Court’s attention that this prosecutor’s office has been reversed on many, many, many occasions for systematically excluding blacks.
“THE COURT: I don’t agree with that, I really don’t.
“[Defense Counsel]: Judge, I have reversed them myself—
“THE COURT: Many, many, many, many occasions?
“[Defense Counsel]: Many times.
“THE COURT: This is [prosecutor,] a very prominent black attorney—
“[Defense Counsel]: Yes, sir, T understand that, Judge.
“THE COURT: That I have worked with and you have too.”
Thereafter, defense counsel made an objection based on alleged racial discrimination by the prosecutor in his peremptory strikes.[1]
“[Defense Counsel]: Yes, sir. But also this same attorney came out in the paper, was quoted as saying that prosecutors do not use their strikes to eliminate blacks. And we feel like at least a prima facie case has been made out.
“THE COURT: Well, I respectfully call your attention to the record, Ms. G., the *1169 one that leans to the defendant; Ms. 0., who has a problem with capital punishment. Ms. H., who is nervous and doesn’t want to see the pictures, she’s on whatever that stuff is—
[[Image here]]
“THE COURT: And I have sat up here for 10 years and I know that — well, I don’t want to say too much because you will say I am putting words in their mouths.
“[Defense Counsel]: Yes, sir.
“THE COURT: So I don’t want to say anything else but other than to decline to say that you have made a prima facie case, [defense counsel].
“[Defense Counsel]: Even with the Hispanic, Judge and no—
“THE COURT: I am going to stand pat and say that you have not made out a prima facie case of discriminatory striking.
“[Defense Counsel]: We respectfully except.
“THE COURT: Yes, sir. Very good.”
Thus, in making his objection that the prosecutor engaged in gender-based discrimination, defense counsel brought to the trial court’s attention the number of strikes by the prosecutor against females in relation to the prosecutor’s total strikes; the prosecutor’s pattern in that he struck only females until his fourteenth strike; the fact that the strikes did not appear to be clearly based on a thorough voir dire in that juror no. 210 was struck without having been asked any questions; that the prosecutor struck at least one female for a reason that did not cause him to strike a male with the same characteristic, specifically inattentiveness; and that he stack a female who indicated that she knew the prosecutor, but also indicated that she knew defense counsel, further stating that her acquaintance with both the prosecutor and the defense counsel would not interfere with her consideration of the evidence in the case.[2] This evidence was sufficient to present a prima facie showing of gender-based discrimination based on the striking of females from the venire. J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
This case is therefore remanded to the trial court with orders that a hearing be held and that the prosecutor should come forward with reasons for his strikes of females. The trial court should examine the reasons given by the prosecutor to determine whether the prosecutor exercised any of his strikes in a discriminatory manner against females. The trial court is directed to file a return to this Court within 90 days of the date of this opinion.
REMANDED WITH INSTRUCTIONS.
All judges concur except TAYLOR, P.J., who dissents with opinion.

. It should be noted that in attempting to establish a prima facie case of racial discrimination by the prosecutor in the preemptory challenges, defense counsel simply pointed out the number of strikes made by the prosecutor against blacks, and a vague claim of a history of prejudicial striking without citing any specific instances.

. These latter two reasons are not included as a finding that the reasons for these strikes fail to be gender-neutral, but rather as part of an examination of the total circumstances surrounding the establishment of a prima facie case.